IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:18-CV-396-BO

| LAMAR TUMMINGS, *et al.*, | ) |   |
|---|---|---|
|   | ) |   |
| Plaintiffs, | ) |   |
|   | ) |   |
| v. | ) | O R D E R |
|   | ) |   |
| CSP COMMUNITY OWNER, LP, | ) |   |
| *as the surviving entity from the merger* | ) |   |
| *with CSP Community Owner, LLC, et al.*, | ) |   |
|   | ) |   |
| Defendants. | ) |   |

This matter is before the court on Defendants' motion to compel physical examinations of Plaintiffs C.T., M.T., and E.M. (the "Minor Plaintiffs") pursuant to Rule 35 of the Federal Rules of Civil Procedure. [DE-40]. Plaintiffs have responded in opposition to the motion. [DE-43]. The court directed the parties to confer on additional matters and submit additional information relevant to the motion, [DE-45], and the parties have done so. [DE-47, -48]. The issues have now been fully briefed, and the motion is ripe for decision. For the reasons stated below, Defendants' motion is allowed.

## I. BACKGROUND

Plaintiffs Lamar Tummings and Veronica Tummings leased an apartment from Defendants in Apex, North Carolina. Compl. [DE-1-2] ¶ 24; Defs.' Mem. [DE-42] at 2. In May 2018, Plaintiffs filed this action alleging that harmful mold was present in the apartment and that Defendants failed to remediate the contamination. Compl. [DE-1-2] ¶¶ 32, 34, 36, 38, 40. Plaintiffs allege Minor Plaintiffs began experiencing respiratory issues and allergies, and continue to suffer from asthma caused by the mold. *Id.* ¶¶ 40, 52–54. Plaintiffs assert further they have

suffered health issues, personal injury, mental and emotional distress, pain and suffering, and medical expenses as a result of Defendants' acts or omissions. *Id.* ¶ 58. On October 30, 2018, Plaintiffs relocated to South Korea. Defs.' Mem. [DE-42] at 2.

On January 3, 2018—before Plaintiffs filed this action—Plaintiffs' counsel consented to a physical examination of the Minor Plaintiffs. [DE-40-11]; Pls.' Mem. [DE-43] at 1. According to Defendants, the parties agreed that it was necessary for Plaintiffs to provide medical records before the examinations. Defs.' Mem. [DE-42] at 3; [DE-40-12]. Also according to Defendants, Plaintiffs did not provide the records, and because the deadline to designate expert witnesses is now approaching, Defendants decided to conduct the examinations despite the lack of medical records. Defs.' Mem. [DE-42] at 4. According to Plaintiffs, Defendants did not mention the physical examinations from January 2018, when Plaintiffs had initially consented to the examinations, until fifteen months later, after Plaintiffs had moved to South Korea. Pls.' Mem. [DE-43] at 3.

On April 2, 2019, Defendants' counsel sent a letter requesting that Plaintiffs provide dates during the week of May 6, 2019 on which the Minor Plaintiffs could be examined by a physician in Raleigh, North Carolina. [DE-43-7] at 2–3. Plaintiffs' counsel responded on April 12, 2019 that it would be a hardship for the Minor Plaintiffs to be examined in Raleigh. [DE-43-8] at 2. Plaintiffs agreed that the children could be examined in South Korea, or they could be examined in North Carolina if Defendants were willing to pay their travel expenses. *Id.* at 3.

Defendants filed this motion to compel on April 23, 2019, [DE-40], and Plaintiffs responded in opposition, [DE-43]. In its review of the parties' briefing, the court found that additional meet and confer efforts were necessary, and therefore directed Defendants' counsel to provide Plaintiffs' counsel with the information required by Fed. R. Civ. P. 35(a)(2)(B) (the "time,

2

place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it"). The court also directed Plaintiffs' counsel to provide Defendants' counsel with dates when the Minor Plaintiffs could be available to appear in North Carolina, and Defendants' counsel to file a notice setting forth any issues remaining in dispute. [DE-45]. According to Defendants' notice filed May 24, 2019, the remaining issues in dispute include: (1) whether the Minor Plaintiffs should undergo skin prick allergy and/or blood allergy tests, (2) which party should pay Plaintiffs' travel expenses, and (3) whether, as an alternative, the court should stay the proceedings until Plaintiffs return to the United States or can more fully participate in the lawsuit. [DE-48] at 3.

## II. DISCUSSION

Rule 35 enables the court to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination." Fed. R. Civ. P. 35(a)(1). The examination may only be ordered "for good cause." Fed. R. Civ. P. 35(a)(2)(A). The court must determine (1) whether the condition to be examined is "in controversy" and (2) whether "good cause" exists for the examination. *Walton v. N.C. Dep't of Agric. & Consumer Servs.*, No. 5:09-CV-302-FL, 2011 WL 883579, at *2 (E.D.N.C. Mar. 11, 2011). "In controversy" and "good cause" "are distinct concepts which must be addressed separately." *Id.* (citations omitted).

### A. In Controversy

When a plaintiff asserts a mental or physical injury, he "places that mental or physical injury clearly in controversy." *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964); *see also Peltier v. Charter Day Sch., Inc.*, No. 7:16-CV-30-H, 2017 WL 4582459, at *1 (E.D.N.C. Jan. 6, 2017) (denying a Rule 35 motion for a mental examination because "Plaintiffs have pled no cause of action placing their mental state at issue"); *Walton*, 2011 WL 883579, at *3 (holding that "the plaintiff's mental condition is clearly in controversy" because the plaintiff asserted claims for

3

severe emotional distress); *Smith v. Bd. of Governors of the Univ. of N.C.*, No. 7:08-CV-30-D, 2008 WL 4877131, at *1 (E.D.N.C. Nov. 10, 2008).

The parties dispute whether the Minor Plaintiffs should undergo allergy testing. [DE-48]. In their complaint, Plaintiffs allege that Minor Plaintiffs C.T. and M.T. developed allergies from the mold. Compl. [DE-1-1] ¶¶ 52–53. They allege that Minor Plaintiff E.M. developed "respiratory problems" from the mold. *Id.* ¶ 54. Plaintiffs contend that the development of asthma is their "principal allegation," [DE-48] at 3, but they do not renounce their initial claim for damages for the Minor Plaintiffs' allergies and respiratory problems. In addition to the allergy tests, Defendants request an asthma evaluation and a spirometry test, and, depending on the results of those tests, a complete blood count test, chest x-ray, and nitric oxide test for each of the Minor Plaintiffs. [DE-47] at 2. Plaintiffs claim that all three of the Minor Plaintiffs developed asthma and respiratory problems. Compl. [DE-1-1] ¶¶ 52–54. Plaintiffs have thus placed the respiratory conditions of the Minor Plaintiffs in controversy. *See Walton*, 2011 WL 883579, at *3. Accordingly, whether the Minor Plaintiffs have developed allergies, asthma, or other respiratory problems caused by the mold in the apartment is an issue in controversy. *See Schlagenhauf v. Holder*, 379 U.S. at 119.

### B. Good Cause

Good cause "means more than relevancy." *Peltier*, 2017 WL 4582459, at *1. "[T]he invasion of the individual's privacy by a physical or mental examination is so serious that a strict standard of good cause, supervised by the district courts, is manifestly appropriate." *Guilford Nat. Bank of Greensboro v. S. Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962). Courts have found good cause for an examination when it is needed "in order to defend against the claim," *Smith*, 2008 WL 4877131, at *2, when "an independent examination is necessary to provide a counter-expert

4

opinion in response to the expert opinions offered by plaintiff's health care providers," *Walton*, 2011 WL 883579, at *3, or "[w]here the average lay person would have difficulty evaluating the nature, extent, and cause of the claimant's injuries," *E.E.O.C. v. Maha Prabhu, Inc.*, No. 3:07-CV-111-RJC, 2008 WL 2559417, at *2 (W.D.N.C. June 23, 2008).

Plaintiffs contend there is no good cause for the examination because the proposed skin prick allergy test of Minor Plaintiffs is invasive and painful and the Minor Plaintiffs have already undergone skin prick allergy tests by their primary care physicians. [DE-48] at 3. Defendants contend that they require an independent examination precisely because the Minor Plaintiffs' primary care physician performed the allergy tests, and the primary care physician will testify on Plaintiffs' behalf. Defs.' Mem. [DE-42] at 6. The need for an independent examination to counter an opposing party's expert witness is recognized as good cause. *Walton*, 2011 WL 883579, at *3. Additionally, the allergy tests performed by Plaintiffs' primary care physician did not test for each spore Plaintiffs' expert listed in her report as being found in the apartment. [DE-48] at 4. Accordingly, Defendants have shown good cause for the examination.

### C. Travel Expenses

Generally, "Rule 35 does not require Defendants to pay Plaintiff's travel expenses." *Smith*, 2008 WL 4877131, at *3; *see also Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 107 (E.D.N.C. 1993) (holding that the defendants must chose a physician near the plaintiff's residence or in the District where the action is pending and noting that "most courts require the plaintiff to submit to an examination by a physician chosen by the defendant if it is held in the venue where the plaintiff chose to file the action."). Some courts have recognized exceptions where the plaintiff would suffer "undue financial hardship by fronting the travel expenses or if the travel expenses

could have been avoided by better planning." *McCloskey v. United Parcel Serv. Gen. Servs. Co.*, 171 F.R.D. 268, 270 (D. Or. 1997).

Plaintiffs contend that paying their own travel expenses poses an undue financial hardship because Plaintiff Veronica Tummings's supervisor previously expressed concern about her job performance if she were forced to leave South Korea, and that the cost for Plaintiffs to travel from South Korea to North Carolina is substantial. Pls.' Mem. [DE-43] at 9. Plaintiffs also argue that the expense could have been avoided by better planning had Defendants requested the examination before Plaintiffs moved to South Korea. *Id.* Defendants contend that the cost is not an undue financial hardship because Plaintiffs recently obtained clearance to return to the United States on a government airplane for the purpose of the proposed medical examination. [DE-48] at 5. Additionally, Defendants contend that they did not request the examinations earlier because they did not have the Minor Plaintiffs' complete medical records, and they did not know that Plaintiffs would move to South Korea four months after initiating this action. Defs.' Mem. [DE-42] at 3–4.

First, the cost of travelling from South Korea to North Carolina does not present an undue financial hardship. Plaintiffs do not contend that they are "destitute," *Chaparro v. IBP, Inc.*, No. CIV. A. 93-2200-GTV, 1994 WL 714369, at *4 (D. Kan. Dec. 7, 1994), or "indigent," *Baird v. Quality Foods, Inc.*, 47 F.R.D. 212, 213 (E.D. La. 1969), and their ability to avoid airfare by use of a government plane appears to substantially mitigate their travel expenses. Second, Defendants have offered a compelling reason for not conducting the examinations earlier: Plaintiffs did not produce their medical records before moving to South Korea. *See McDonald v. Southworth*, No. 1:07-CV-217-JMS-DFH, 2008 WL 2705557, at *6 (S.D. Ind. July 10, 2008) (holding that the plaintiff must bear his own travel expenses even though he had already travelled to the forum state for a deposition because at the time of the deposition, the defendant had not yet received all of the

6

plaintiff's medical records, and "Defendant wanted to wait to schedule a physical examination until his counsel and the examiner had reviewed those records"); *Romano v. United Parcel Serv. Gen. Servs. Co.*, No. CIV. 94-1464-FR, 1997 WL 177182, at *1 (D. Or. Apr. 3, 1997) (same). The timing of the examination could not have been improved by better planning.

In the April 12 letter to Defendants' counsel, Plaintiffs' counsel references the court's previous order holding that it would be an undue hardship for Plaintiff Lamar Tummings to travel to North Carolina for a deposition. [DE-43-8] at 2; [DE-39]. However, the court granted Plaintiffs' motion for a protective order because Plaintiffs had shown good cause for conducting the deposition remotely; here, there is no suggestion that a physical examination could be conducted by telephone or other electronic means. [DE-39] at 3.

In summary, the general rule that a plaintiff must pay his own expenses to litigate in the chosen forum prevails. *See Baird*, 47 F.R.D. at 213. Plaintiffs have not shown that they will suffer undue financial hardship or that the expenses could have been avoided with better planning. Accordingly, Defendants are not required to bear the cost of Plaintiffs' travel to North Carolina.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel Physical Examinations [DE-40] is ALLOWED. It is hereby ORDERED:

1. Minor Plaintiffs shall appear before Dr. Jonathan Romeo, D.O. at a mutually agreeable convenient day and time at Allergy Partners of the Triangle, 2615 Lake Drive, Suite 301, Raleigh, North Carolina 27607 and submit to a (1) standard asthma evaluation, which will consist of a detailed history and physical examination of each child; (2) skin prick allergy test and/or blood allergy test, which will specifically include testing for

7

all spores identified in Plaintiffs' LRC Indoor Testing and Research Results; and (3) spirometry test;

2. If necessary based on Dr. Romeo's findings, Minor Plaintiffs may also submit at the time of this appointment to a complete blood count test, chest x-ray, and/or nitric oxide test;

3. Within twenty (20) days of the completion of said testing, Defendants' counsel shall provide the results of the testing to Plaintiffs' counsel; and

4. Within twenty-five (25) days of the completion of said testing, Defendants' counsel shall provide a copy of Dr. Romeo's expert report to Plaintiffs' counsel.

SO ORDERED, the 3d day of June 2019.

Robert B. Jones, Jr.
United States Magistrate Judge